UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

———

No. 1:24-cv-00863

———

**MCP IP, LLC,**
*Plaintiff,*

v.

**Velocity Outdoor Inc.,**
*Defendant.*

———

**OPINION AND ORDER**

Before the court is defendant's motion to dismiss or transfer in the alternative. Doc. 11. For the reasons below, the court grants the motion to transfer and declines to rule on dismissal.

**I.  Background**

Plaintiff, MCP, is an LLC organized under the laws of South Dakota and headquartered in Wisconsin. Doc. 1. It owns the three patents in suit: U.S. Patent Nos. 11,796,277; 12,000,668; and 12,000,669. Docs. 1-1, 1-2, 1-3. All three patents describe crossbows with certain features not relevant here. Plaintiff brings this infringement action against Velocity, a Delaware corporation headquartered in New York. Doc. 1. Plaintiff alleges infringement of its patents by the accused products—the R500 and R50X crossbows. Only the R500 has been released. Doc. 36 at 3 & n.2.

Defendant is the parent company of Ravin Crossbows, LLC, the company whose brand the crossbows bear. Doc. 1 at 3–4. Ravin is located in Wisconsin. Doc. 12 at 6. The parties disagree on the allocation of responsibilities between Velocity and Ravin—a key issue in the case. Defendant claims that Ravin is the entity that designs, manufactures, and sells the accused crossbows. *Id.* Defendant claims to be a mere holding company uninvolved in any operations relevant to the accused products. *Id.* Plaintiff, on the other hand, alleges that defendant has infringed the patents in suit by its own production of the crossbows, by directing Ravin to act

as its agent and infringe, by inducing Ravin and others to infringe, and by contributing to others' infringement. Doc. 1 at 4, 7, 10.

When plaintiff sued defendant here in Delaware, there was already ongoing litigation in the Western District of Wisconsin. Plaintiff had twice sued Ravin, alleging violations of 13 patents. Doc. 12 at 6; *see MCP IP, LLC v. Ravin Crossbows, LLC*, No. 3:22-cv-00004 (W.D. Wis. Jan. 3, 2022); *MCP IP, LLC v. Ravin Crossbows, LLC*, 3:23-cv-00142 (W.D. Wis. Mar. 1, 2023). One of the crossbows (the R500) at issue in the Wisconsin litigation is at issue here, Doc. 12 at 10, but none of the patents are. Now defendant moves to dismiss the case, arguing that plaintiff fails to allege that defendant, rather than Ravin, did the infringing. Docs. 11, 12 at 7. Defendant argues that plaintiff's allegations are conclusory and that they fail to allege facts sufficient to state a claim either for direct infringement or for indirect infringement.

Alternatively, defendant seeks to have the case transferred to the Western District of Wisconsin. Doc. 12 at 7–8. Defendant argues that the case's only connections to Delaware are that defendant is incorporated here and that the accused products are sold nationwide, including in Delaware. Doc. 19 at 5. Defendant frames plaintiff's choice to sue in Delaware as "blatant forum shopping." Doc. 12 at 6. Plaintiff opposes transfer and argues that its claims focus on defendant, not on Ravin, and therefore that the case should proceed in defendant's state of incorporation. Doc. 17 at 6.

## II. Analysis

The court begins with transfer rather than dismissal. If the case should be transferred, then the transferee court is better suited to rule on the motion to dismiss.

The transfer analysis is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought or to any district or division to which all parties have consented.

The analysis therefore has two steps: (1) whether the action could have been brought in the proposed transferee district and (2) whether transferring would be for the convenience of the parties and witnesses and in the interest of justice. *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012). Third Circuit law generally governs the transfer analysis. *See In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) ("we apply the law of the regional circuit").

### A. The case could have been brought in the Western District of Wisconsin.

To succeed on the first step of the transfer analysis, the moving party must demonstrate that the plaintiff had an "unqualified right" to bring the action in the transferee forum. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). That requires three things: (1) the transferee forum would have subject-matter jurisdiction over the claims, (2) it would have personal jurisdiction over the defendant, and (3) it would be a proper venue. *Mekiki Co. v. Facebook, Inc.*, No. 1:09-cv-00745, 2010 WL 2348740, at *2 (D. Del. June 7, 2010) (citing *Shutte*, 431 F.2d at 24). A defendant generally can waive its venue and personal-jurisdiction objections. But to succeed on a transfer motion, the defendant must show that the plaintiff could have originally brought the action in the transferee forum "independently of the wishes of defendant." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960), *superseded by statute on other grounds*, 28 U.S.C. § 1404(a). Thus, the time plaintiff filed the action is the relevant point for determining whether the action could have been brought in the transferee forum.

Defendant argues that the case could have been brought in the Western District of Wisconsin. Doc. 12 at 19. Plaintiff's responsive briefing, however, focuses on the convenience factors and does not argue that the case could not have been brought in the Western District of Wisconsin. *See* Doc. 17 at 15–21. Plaintiff has therefore waived that argument. *Kiger v. Mollenkopf*, No. 1:21-cv-

00409, 2021 WL 5299581, at *2 n.2 (D. Del. Nov. 15, 2021) ("A party that fails to address an argument in its brief in opposition . . . waives that argument." (quoting *Walsh v. Fusion Japanese Steakhouse, Inc.*, No. 2:19-cv-00496, 2021 WL 2917795, at *5 (W.D. Pa. July 12, 2021))).

Still, the case could have been brought in the Western District of Wisconsin. There is no question that it would have subject-matter jurisdiction over plaintiff's patent claims. *See Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 772 n.7 (3d Cir. 1984) ("28 U.S.C. § 1338(a) grants all district courts in the United States jurisdiction over patent claims."). And plaintiff's own allegations, taken as true, establish both that defendant is subject to personal jurisdiction in Wisconsin and that the Western District of Wisconsin would be a proper venue.

For personal jurisdiction, the court looks at whether "(1) there is a statutory basis for jurisdiction under the forum state's long-arm statute and (2) the exercise of jurisdiction comports with the defendant's right to due process." *Elliott v. The Marist Bros. of the Schs., Inc.*, 675 F. Supp. 2d 454, 457 (D. Del. 2009) (quotation marks omitted); *see* Fed. R. Civ. P. 4(k)(1)(A). Wisconsin's long-arm statute not only subjects a defendant to jurisdiction for "an act or omission within [Wisconsin] by the defendant," but also "attributes to the defendant any person's acts for which the defendant is legally responsible." Wis. Stat. Ann. §§ 801.03(1), 801.05(3) (West 2025). Further, it "has been interpreted to confer jurisdiction to the fullest extent allowed under the due process clause." *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012). That means that "the constitutional and statutory questions tend to merge," *id.*, and "the inquiry can sometimes be collapsed into one step," *Lumino, Inc. v. Lumi Importing Ltd.*, No. 3:24-cv-00189, 2025 WL 2209536, at *2 (W.D. Wis. Aug. 4, 2025).

The Federal Circuit "applies the Fourteenth Amendment state-contacts test of *International Shoe*." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 n.1 (Fed. Cir.

1998).[1]   The   specific-jurisdiction   test   has   three   steps:
"(1) whether the defendant purposefully directs activities at the
forum's residents; (2) whether the claim arises out of or relates to
those activities; and (3) whether assertion of personal jurisdiction
is reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358, 1361 (Fed. Cir. 2012).

First is whether defendant purposefully directs activities at
the forum state, also known as the "purposeful availment" re-
quirement. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475
(1985). Plaintiff here alleges that defendant itself committed the
infringement acts: that defendant "manufactures" the accused
products and engages in "making" the accused products. Doc. 1
at 4, 7, 10. The R500 is undisputedly manufactured in Superior,
Wisconsin. Doc. 13 at 7; Doc. 36 at 1. At the hearing, plaintiff clar-
ified its "manufactures" and "making" allegations: plaintiff al-
leges that the Ravin facility in Wisconsin "is actually a Velocity
factory." Doc. 36 at 1. Taken as true, those allegations state "some
act" by defendant constituting "purposeful availment" of the
"privilege of conducting activities within" Wisconsin. *Fuld v. Pal.
Liberation Org.*, 606 U.S. 1, 13 (2025). And they amount to
"act[s] . . . within [Wisconsin] by the defendant" under the long-
arm statute. Wis. Stat. Ann. § 801.05(3).

On top of alleging infringement by defendant's own actions,
plaintiff also asserts an agency theory—that defendant is liable for
infringing through Ravin. In the context of specific jurisdiction,
"a corporation can purposefully avail itself of a forum by directing
its agents or distributors to take action there." *Daimler AG v. Bau-
man*, 571 U.S. 117, 135 n.13 (2014); *see also Celgard, LLC v. SK
Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015) ("In order to
establish jurisdiction under the agency theory, the plaintiff must
show that the defendant exercises control over the activities of the
third-party."). Also, recall that the Wisconsin long-arm statute

---

[1] While Third Circuit law generally applies to transfer, the Federal Circuit
applies its own law to "jurisdictional issues that are intimately involved with
the substance of the patent laws." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343,
1347 (Fed. Cir. 2016) (quotation marks omitted).

attributes to a defendant others' acts "for which . . . the defendant is legally responsible." Wis. Stat. Ann. § 801.03(1). A defendant is legally responsible for its agent's patent infringement where it "directed the specific actions of the alleged agent." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989). So an agency theory here would support jurisdictional contacts if defendant directed Ravin's allegedly infringing actions in the forum.

Plaintiff alleges the following in support of its agency theory:

- Velocity offers its products in the United States under various brands, including Ravin Crossbows, LLC ("Ravin"), which is a wholly owned subsidiary of Velocity.

- Velocity directs and/or controls the activities of Ravin.

- Velocity itself or through Ravin designs, manufactures, markets, offers for sale, and/or sells crossbows under the Ravin brand, including for example the Ravin R500 and R50X crossbows (the "Accused Products").

- Velocity directs and controls the actions of its subsidiaries, retailers, and distributors with respect to the manufacture, offer for sale, and sale of the Accused Products, and actively induces the infringement of those parties.

Doc. 1 at 3–4, 5–6, 9, 11. In other words, plaintiff alleges that defendant "directs and controls any infringement by its subsidiary, Ravin." Doc. 17 at 8 (plaintiff's brief in opposition). There is no dispute that Ravin is in Wisconsin, *cf.* Doc. 17 at 6, which means that plaintiff alleges that defendant has directed Ravin to take infringing action in Wisconsin. That is enough to constitute purposeful availment and to satisfy the Wisconsin long-arm statute. Plaintiff's allegations therefore establish defendant's contacts with Wisconsin in two different ways—on the basis of defendant's own actions and on an agency theory.

Plaintiff's direct-infringement claims undoubtedly "arise out of" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Defendant's alleged manufacturing of

- 6 -

the products and its alleged control of Ravin—both in Wisconsin—constitute the directly infringing activities that plaintiff is suing over. Doc. 1 at 3–4, 5–6, 9, 11; *see generally Mobil Oil*, 718 F. Supp. 260 at 266, 271–72 (discussing the agency theory in the context of patent infringement). As for the indirect-infringement claims (inducement and contributory infringement), Wisconsin would have supplemental personal jurisdiction over defendant because all of plaintiff's patent-infringement claims arise out of a common nucleus of operative fact. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003). They all concern the same products, the same patents, the same defendant, and the same subsidiary. *See* Doc. 1.[2]

The final personal-jurisdiction question is whether it would be fair and reasonable to exercise personal jurisdiction over the defendant. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). Plaintiff alleges that defendant purposefully committed and controlled the acts in Wisconsin, and plaintiff submits evidence that defendant has multimillion-dollar revenues. *See* Doc. 17-1 at 19. Defendant would have a hard time making out a case for unfairness under those circumstances. Wisconsin therefore would have personal jurisdiction over defendant even without defendant's consent.

That leaves venue. In patent-infringement actions, venue lies only in the districts "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Defendant does not reside in the Western District of Wisconsin. *See TC*

---

[2] If plaintiff were to posit some difference between the due-process standard and Wisconsin's long-arm statute regarding supplemental personal jurisdiction, that argument would not lead to a different result in this case. The long-arm statute authorizes jurisdiction over a defendant for acts committed outside of Wisconsin that injured a plaintiff's property within the state, "provided in addition that at the time of the injury . . . [p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade." Wis. Stat. Ann. § 801.05(4)(b). Plaintiff alleges that defendant manufactures the R500 and that it is sold nationwide, which would include Wisconsin. *See* Doc. 1 at 4, 7, 10; Doc. 17 at 16–17.

*Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 270 (2017) ("As applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation." (alteration in original)). However, as discussed immediately above, plaintiff alleges that defendant *itself* makes the accused products in the Western District of Wisconsin. If that and plaintiff's other allegations are true, then defendant has an established and regular place of business in the Western District of Wisconsin where it commits infringing acts, and venue could lie there.

Alternatively, if defendant has directed and controlled Ravin's design, manufacture, and sale of the accused product or products, then defendant has made a regular and established place of business in that district through its agent. *See Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1288 (Fed. Cir. 2021) ("A regular and established place of business requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged place of business" (cleaned up)). Ravin has a regular and established place of business in the Western District of Wisconsin, and plaintiff alleges that defendant directs and controls the infringing activities of its agent, Ravin. That is enough at this stage.

Plaintiff disagrees. In its post-hearing briefing, plaintiff now argues that agency allegations are insufficient to show a regular and established place of business. Doc. 35 at 2. In other words, defendant's control over Ravin's infringement activities at Ravin's place of business does not make it defendant's place of business. For that proposition, plaintiff cites *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-00293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 334–35 (1925)), *report and recommendation adopted*, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017). *Id.* That case stated that "even if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness." *Id.* (citing *Cannon*,

- 8 -

267 U.S. at 334–35). However, *Cannon*, on which *Soverain* relied, involved a personal-jurisdiction issue in a breach-of-contract case, and it predated the modern personal-jurisdiction framework enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). It did not answer the question whether a parent company must lack corporate separateness from the subsidiary for the subsidiary's place of business to be the parent's for purposes of the patent-venue statute.

But *Andra Group*, a Federal Circuit case, made clear that agency theory and lack-of-corporate-separateness theory are two different ways of meeting the "regular and established place of business" requirement of the patent-venue statute. 6 F.4th at 1287–90.[3] That case even cited *Cannon* for its discussion of the lack-of-corporate-separateness theory. *Id.* at 1289. The reason that the agency theory did not prevail in that case was not because of a failure to show a lack of corporate separateness; the agency theory failed because there was no showing of the required degree of control over the putative agents. *Id.* And while *Andra Group* considered whether the in-state company's *employees* (i.e., individuals) were agents of the out-of-state companies, it derived the agency-venue principle from *In re Google LLC*, in which the putative agents were business entities. 949 F.3d 1338, 1345 (Fed. Cir. 2020) (deciding whether Google had a place of business based on an agency relationship with internet-service providers). So a parent company has a regular and established place of business where its agent–subsidiary is conducting the parent company's business.

Here, plaintiff has alleged the required control over the business in the Western District of Wisconsin, so its own allegations establish that venue would be proper in the Western District of Wisconsin. Even if not, its allegations of defendant's own actions suffice. Because defendant has succeeded on step one of the

---

[3] Although Third Circuit law governs the transfer analysis generally, "[w]hether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018).

§ 1404(a) analysis, showing that the action could have been brought in the Western District of Wisconsin, the court now turns to the convenience step of the analysis.

**B.  The *Jumara* factors favor transfer.**

For the § 1404(a) convenience analysis, courts in the Third Circuit apply the 12-factor test from *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). There are six private-interest and six public-interest factors:

**<u>Private</u>**

- plaintiff's forum preference as manifested in the original choice;

- the defendant's preference;

- whether the claim arose elsewhere;

- the convenience of the parties as indicated by their relative physical and financial condition;

- the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

- the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). . . .

**<u>Public</u>**

- the enforceability of the judgment;

- practical considerations that could make the trial easy, expeditious, or inexpensive;

- the relative administrative difficulty in the two fora resulting from court congestion;

- the local interest in deciding local controversies at home;

- the public policies of the fora; and

- the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted).

### 1. Private-interest factors

*First is the plaintiff's forum preference.* Plaintiff, a Wisconsin-based company, chose to file this action in the District of Delaware. The parties disagree about the import of that decision. Defendant argues that the weight of this factor is "somewhat lessened" because plaintiff is an out-of-state resident without any apparent connection to Delaware. Doc. 12 at 20 (citing *Dermansky v. Young Turks, Inc.*, No. 1:22-cv-00345, 2023 WL 4351340, at *2 (D. Del. July 5, 2023). Plaintiff argues that its choice still "should not be lightly disturbed." Doc. 17 at 16 (citing *Jumara*, 55 F.3d at 879).

Under Third Circuit precedent, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration." *Shutte*, 431 F.2d at 25. But the District of Delaware has given the plaintiff's choice different weight in different cases. In some, it discounted the weight of the plaintiff's choice where the plaintiff lacked any connection to the forum state. *See, e.g.*, *Werner v. Hive Media Grp., LLC*, No. 1:20-cv-01176, 2021 WL 3662902, at *2 (D. Del. Aug. 18, 2021); *Express Mobile, Inc. v. Web.com Grp., Inc.*, No. 1:19-cv-01936, 2020 WL 3971776, at *2 (D. Del. July 14, 2020). In others, it reasoned that the plaintiff's connection to the forum has no bearing on the factor. *See, e.g.*, *Rampart IC, LLC v. Egg Med., INC.*, No. 1:24-cv-00643, 2025 WL 227287, at *2 (D. Del. Jan. 17, 2025); *VLSI Tech. LLC v. Intel Corp.*, No. 1:18-cv-00966, 2018 WL 5342650, at *5 (D. Del. Oct. 29, 2018). To ensure that plaintiff's choice of forum is not lightly disturbed and to avoid double counting factors, this court will assume that this factor remains paramount and is not dampened by plaintiff's lack of connection to Delaware. *Cf. Rampart*, 2025 WL 227287, at *2 ("Many of the reasons for lessening the importance of a plaintiff's choice in forum are subsumed and given weight under [other] *Jumara* factors . . . ."). Accordingly, this factor weighs strongly against transfer.

*Second is the defendant's forum preference.* This factor weighs in favor of transfer, but it receives less weight than plaintiff's choice of forum. *See Inst. for Env't Health Inc. v. Nat'l Beef Packing Co.*, No. 1:23-cv-00826, 2024 WL 2208948, at *5 (D. Del. May 16, 2024).

*Third is whether the claim arose elsewhere.* As discussed above, plaintiff asserts both direct- and indirect-infringement claims against defendant. Direct infringement occurs wherever someone "makes, uses, offers to sell, or sells" the infringing instrumentality without permission. *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015); 35 U.S.C. § 271(a). And claims for patent infringement "arise wherever alleged infringement has occurred." *Magnacross LLC v. GE MDS LLC*, No. 1:20-cv-964, 2020 WL 6581530, at *6 (D. Del. Nov. 10, 2020). So plaintiff argues that the claims arose everywhere that defendant sells products, including in Delaware. Doc. 17 at 16–17.

But that oversimplifies the matter for two reasons. The first reason is that there is a factual dimension to this factor: claims can arise to a greater degree in one forum while also technically, as a matter of law, arising in other forums. Thus, for direct-infringement claims, the District of Delaware "typically focuses on the location of the production, design and manufacture of the accused instrumentalities." *Papst*, 126 F. Supp. 3d at 439; *see also Rampart*, 2025 WL 227287, at *3 ("a patent infringement claim does have deeper roots in the forum where the accused products were developed" (quotation marks omitted)). There is no dispute that the accused products are developed in Wisconsin.

The second reason plaintiff's argument oversimplifies this factor is that plaintiff also alleges indirect infringement—one form of which is contributory infringement. Contributory infringement involves the importation and sale of *components*, not the finished goods, and it arises where the components are sold or imported. *See Aqua Connect, Inc. v. TeamViewer US, Inc.*, No. 1:18-cv-01572, 2023 WL 6387791, at *9 (D. Del. Sept. 29, 2023). But

plaintiff argues that defendant sells the *accused products* nation-wide. Doc. 17 at 16–17. While it is unclear whether the alleged importation and sale of components take place only in Wisconsin, it is more likely that they are concentrated there because that is where Ravin is headquartered. At the very least, plaintiff's argument on this factor fails to account for the differences in where its different claims arose.

For those two reasons—that more alleged infringement takes place in Wisconsin and that there is no argument that the contributory-infringement claims arose in Delaware—this factor weighs in favor of transfer.

*Fourth is the convenience of the parties, as indicated by their relative physical and financial condition.* This factor requires the court to consider "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 910 F. Supp. 2d at 731. "In cases involving Delaware corporations, other federal courts in Delaware have required the movant to prove that litigating in Delaware would pose a unique or unusual burden on its operations in order to show that this factor favors transfer." *Inst. for Env't Health*, 2024 WL 2208948, at *5 (cleaned up).

Plaintiff is physically located in Wisconsin; defendant is in Rochester, New York. Defendant's employees would have to get on a plane either way, but plaintiff's employees would have to fly only if the case proceeds in Delaware. Neither party addresses its ability to bear the burden of travel relative to the other's. Wisconsin is therefore more convenient in terms of party location and logistical costs of travel. At the same time, defendant does not indicate that litigating in Delaware would pose an unusual or unique burden on its operations. As plaintiff points out, defendant is a large company. *See* Doc. 17 at 17. Because defendant is incorporated in Delaware and has failed to show an unusual burden, this

factor cannot favor transfer. *Cf. Rampart*, 2025 WL 227827, at *3. It is therefore neutral.

*Fifth is the convenience of the witnesses.* As *Jumara* made clear, this factor is relevant "only to the extent that the witnesses may actually be unavailable for trial" in Delaware or in the Western District of Wisconsin. 55 F.3d at 879. This factor is primarily concerned with non-party fact witnesses because parties have the ability and duty to procure the attendance of their employees for trial. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Defendant can prevail on this factor by showing that a non-party witness is within the subpoena power of the Western District of Wisconsin but not Delaware and that there is reason to believe that the witness actually will refuse to testify absent a subpoena. *Smart Audio Techs.*, 910 F. Supp. 2d at 732.

The parties identify several witnesses who might be called to testify at trial:

- the inventors of the patented technology (Wisconsin);
- the attorney who prosecuted the patents (Wisconsin);
- employees of Mathews Archery (Wisconsin);
- defendant's management (presumably New York);
- employees of Ravin (Wisconsin);
- Ronald Schindler, former director of IP for Velocity (Rochester, New York); and
- Matt McPherson, owner of plaintiff and Mathews Archery (Wisconsin).

*See* Doc. 12 at 9, 22–23; Doc. 17 at 18; Doc. 19 at 12–13.

Some of those witnesses are not relevant to this analysis. Defendant's management and Ravin's employees are witnesses whose attendance defendant will have a duty to procure. *Cf. Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, No. 1:12-cv-00139, 2013 WL 3293611, at *5 (D. Del. June 28, 2013) (reasoning that the party would have a duty to procure the employees of its subsidiary). And in its post-hearing briefing, plaintiff now represents that

the inventors, including Matt McPherson, are also party witnesses. Doc. 35 at 5. The court takes that to be true.

Moreover, Ronald Schindler, in New York, is outside either district's subpoena power. *See* Fed. R. Civ. P. 45(c) (authorizing a subpoena to compel attendance only "within 100 miles" or "within the state where the person resides, is employed, or regularly transacts business in person"). Proceeding in one district versus the other would not affect whether the parties could procure his attendance through legal process. He would have to fly to either district, and there is no indication that he would be willing to fly only to one rather than the other.

As to the prosecuting attorney, there is not enough information for the court to assess availability in one district but not the other. Accordingly, none of those witnesses pushes the needle either way.

That leaves the Mathews Archery employees. Plaintiff claims in its post-hearing briefing that "[o]utside of the inventors, Velocity does not specifically identify any witnesses that would not be made available at trial in Delaware but who would be in the subpoena power of the Wisconsin court." Doc. 35 at 5. But in its reply brief, which predates plaintiff's assertion, defendant identifies Mathews Archery employees as non-party witnesses who are outside the subpoena power of Delaware and who reside in Wisconsin. Doc. 19 at 12–13.

The court agrees. Mathews Archery is owned by plaintiff's owner, but plaintiff has not represented that it has the ability to ensure that the Mathews Archery employees attend trial in Delaware. Instead, plaintiff argued at the hearing that those employees would not be called as witnesses. Maybe plaintiff does not plan to call them. But defendant argues that they "have information relevant to marking issues, the value of the invention, and damages." Doc. 19 at 12. In other words, they have highly probative information and might be called. Those potential witnesses are likely within the subpoena power of the Western District of Wisconsin but not this court. *See* Doc. 13 at 257 (listing address in Sparta,

Wisconsin, on the Mathews website). To travel to this court would require them to board a plane, miss at least some work, and possibly stay overnight outside of their home state. Unless they were required to by law or by their employer, there is an appreciable chance that they would simply refuse to do so.

Because of the chance that Mathews Archery employees would be unavailable for trial in Delaware but not Wisconsin, this factor pushes in favor of transfer.

*Sixth is the location of books and records.* This factor is "similarly limited to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Electronic files could easily be produced in either forum. The only physical evidence defendant points to is "a literal pile of prior art crossbows and prior art magazines and publications kept by MCP . . . in Wisconsin." Doc. 12 at 23. But there is no argument that the crossbows and publications could not be transported for trial or another hearing. Both parties generate revenue, at least indirectly, through shipping crossbows. This factor is neutral.

To summarize the private-interest factors: Plaintiff's choice of forum pushes against transfer. Defendant's preference of forum, where the claims arose, and the convenience of the witnesses push in favor of transfer.

### 2. Public-interest factors

*Seventh is the enforceability of the judgment.* The parties agree that this factor is neutral. Doc. 19 at 13 n.4.

*Eighth are practical considerations that could make trial easy, expeditious, or inexpensive.* Sometimes, District of Delaware judges analyze the existence of related litigation under this factor; sometimes they do so under the public-policy factor. *Compare Smart Audio Techs.*, 910 F. Supp. 2d at 732–33, *with Zazzali v. Swenson*, 852 F. Supp. 2d 438, 452–53 (D. Del. 2012). Either way, the ongoing, related litigation in the Western District of Wisconsin pushes in favor of transfer. There are currently two cases pending in the Western District of Wisconsin in which plaintiff asserts patent-infringement claims against defendant's wholly owned

subsidiary, Ravin, which plaintiff alleges defendant controls. One of those cases involves the R500, an accused product in this case. Doc. 12 at 26. Although the patents at issue are different, they all involve crossbow technology and the differences between them concern different crossbow features. The Wisconsin cases are both assigned to the same district judge and referred to the same magistrate judge; both judges either will obtain or already have obtained familiarity with the crossbow technology common or similar across all of the patents. As defendant points out, there is also likely to be overlapping claim construction. Doc. 36 at 3. So economies of scale would result from transferring this case to that court, provided that it is also assigned to the same district judge.

Two other practical considerations also favor transfer. Neither party has any connection to Delaware besides defendant's incorporation status, which this court ignored for the first factor but deems relevant here. *Supra* section II.B.1; *see also Rampart*, 2025 WL 227287, at *4–5 (considering the same under this factor). The District of Delaware has also considered the absence of a local-counsel requirement in the transferee forum. *See Papst*, 126 F. Supp. 3d at 444. The Western District of Wisconsin's local rules expressly provide that "[n]on-resident lawyers need not retain local counsel to assist in the presentation of their cases unless specifically directed to do so by a judge or magistrate judge." W.D. Wis. LR 83.5(D); *cf.* D. Del. Rule 83.5. Although the parties did not brief the issue, it is at least plausible that transferring to the Western District of Wisconsin would save costs associated with Delaware local counsel.

For those three reasons, the practical-considerations factor pushes in favor of transferring the case to the Western District of Wisconsin.

*Ninth is the relative administrative difficulty in the two forums from court congestion.* Both parties' metrics indicate that the Western District of Wisconsin is less congested than the District of Delaware. *See* Doc. 12 at 25 (citing 494 weighted filings per judgeship in the Western District of Wisconsin and 657 in Delaware);

Doc. 17 at 20 (citing an average of 27.2 months to trial in the Western District of Wisconsin and 32.9 months in Delaware).

Plaintiff argues, however, that the relevant comparator is not Delaware but instead the Eastern District of Texas because the undersigned, sitting by designation in this case, is stationed in the Eastern District of Texas. Because the Eastern District of Texas has an average time to trial of 21.6 months, plaintiff argues that this factor might actually weigh against transfer. Doc. 17 at 20.

In some cases, District of Delaware judges have looked at the congestion of the court from which the sitting judge is visiting. *See, e.g.*, *Rampart*, 2025 WL 227287, at *5. But in others, they have looked at the congestion associated with the District of Delaware even though the sitting judge is stationed elsewhere. *See, e.g.*, *Blackbird Tech LLC v. Cloudflare, Inc.*, No. 1:17-cv-00283, 2017 WL 4543783, at *12 (D. Del. Oct. 11, 2017) (finding this factor to weigh slightly in favor of transfer). The latter approach seems to be the more principled one. For one, *Jumara* instructs the court to compare "relative administrative difficulty in the two *fora*," not the two judges' dockets. 55 F.3d at 879 (emphasis added). And further, if the undersigned were to recuse for some reason, then the case would be reassigned to a District of Delaware judge, not an Eastern District of Texas judge.

Because Delaware is more congested than the Western District of Wisconsin, this factor favors transfer.

*Tenth is the local interest in deciding local controversies at home.* "[C]ourts in this district have held that the 'local interest' factor is typically neutral in patent cases because in general a patent infringement action is 'more properly described as a national controversy.'" *Rampart*, 2025 WL 227287, at *5 (quoting *Take2 Techs. Ltd. v. Pac. Bioscis. of Cal., Inc.*, No. 1:22-cv-01595, 2023 WL 4930359, at *10 (D. Del. Aug. 2, 2023)). But at least one judge in this district has concluded that "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del.

2012) (quoting *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)). There is a significant connection between the Western District of Wisconsin and the events that gave rise to the present lawsuit: that is where plaintiff and Ravin are headquartered, where the accused products are designed and manufactured, where the patented technology was invented, and where the entity that sells the patented technology is located. And besides the national sales of Ravin products, the only connection to Delaware is the incorporation status of defendant. This factor weighs slightly in favor of transfer.

*Eleventh are the public policies of the two forums.* Defendant is a "Delaware corporation and public policy encourages Delaware corporations to resolve disputes in Delaware courts." *Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, No. 1:19-cv-01868, 2020 WL 3640065, at *7 (D. Del. July 6, 2020) ("even where only one party is a Delaware corporation"). But that policy is "irrelevant" where the only Delaware corporation involved in the case "does not want to litigate here." *Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, No. 1:19-cv-01993, 2020 WL 331119, at *6 (D. Del. Jan. 21, 2020). And anyway, it is less important in federal court than in Delaware's own courts because "claims are resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence in every federal district court." *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 692 F. Supp. 3d 421, 438 (D. Del. 2023) (quotation marks omitted). So the court finds that this factor is neutral.

*Twelfth and last is the familiarity of the trial judge with applicable state law in diversity cases.* This is a federal-question case, not a diversity case, so the final factor is irrelevant.

### III. Conclusion

In addition to the three private-interest factors favoring transfer and one disfavoring transfer, three public-interest factors favor transfer while none disfavors it. Even though plaintiff's choice of forum is the most important factor in the above analysis, that is the only factor resisting transfer. It loses to the six in favor. To

transfer under such circumstances does not disturb plaintiff's choice lightly. Plaintiff's choice instead yields to defendant's strong showing that the Western District of Wisconsin is the more convenient forum—a result that comports with the legal framework and with common sense.

For some of the same reasons that it is appropriate for this court to transfer the case, it would be inappropriate for this court to rule on the motion to dismiss. Instead, the court defers ruling on dismissal. *Cf. Rosado v. Doe*, No. 1:17-cv-00205, 2018 WL 1305064, at *1 (W.D. Pa. Mar. 12, 2018) ("A decision on the motions to dismiss is best left to the transferee court.").

Therefore, defendant's motion (Doc. 11) is granted to the extent that it requests a transfer. The court declines to rule on the component of the motion requesting dismissal for failure to state a claim. Pursuant to 28 U.S.C. § 1404(a), the court orders this case transferred to the Western District of Wisconsin. The case should be assigned to Judge James D. Peterson, to whom the two related cases are already assigned.

*So ordered by the court on August 19, 2025.*

J. CAMPBELL BARKER
United States District Judge